## W. A. REYNOLDS v. PHIL PRAY, Appellant.

**Brokers:** AGREEMENT TO SHARE COMMISSIONS: EVIDENCE. In this action by one real estate broker to recover a portion of the commissions received by another broker, in consideration of the privilege granted defendant to use plaintiff's office for the transaction of business, the evidence is held sufficient to authorize recovery.

**Same:** ACCEPTANCE OF PROPOSITION TO DIVIDE COMMISSIONS. Where, as in this case, plaintiff alleged an express promise of defendant to divide commissions arising out of business secured through plaintiff's office, in consideration for the use of his office, acceptance of the proposition will be inferred from a continued en-

joyment of the privilege without an express allegation of acceptance.

**Damages:** SUBMISSION OF ISSUE: HARMLESS ERROR. Where the verdict should either have been for plaintiff in a stated sum or for defendant and the jury allowed plaintiff less than such sum, the defendant was not prejudiced by the error, if any, in permitting the jury to determine the amount.

**Evidence:** HEARSAY: MOTION TO STRIKE. A motion to strike evidence on the ground of hearsay, which is directed to the entire answer of a witness, part of which is competent, should be overruled; but where the motion points out the precise portion of the answer subject to the objection it should be sustained.

*Appeal from Linn District Court.*—HON. W. N. TREICHLER, Judge.

FRIDAY, JULY 8, 1910.

ACTION for share in commission earned by defendant in a real estate transaction resulted in judgment for plaintiff. The defendant appeals.—*Affirmed.*

*Deacon, Good, Sargent & Spangler,* for appellant.

*Randall, Courtney & Harding,* for appellee.

LADD, J.—The plaintiff had been a real estate agent for many years with offices in Cedar Rapids. The defendant, a friend of many years, dropped into the office frequently and sometimes made use of the telephone. According to plaintiff's testimony, and it is somewhat corroborated, after making use of the office and telephone, defendant would say, "Now, Reynolds, if I ever get a deal in your office, I am going to divide commissions with you." The defendant denies this, but the jury might have found that on this basis he was accorded and accepted the privileges of the plaintiff's office. The circumstances were such as not

to leave the meaning of "deal" in doubt. Both were engaged in effecting for themselves or others the sale or exchange of real estate, stock of goods, and other property, and plainly enough the term employed had reference to such a transaction. Webster's Dictionary defines "deal" as "an arrangement to attain a desired result by a combination of interested parties." But for some understanding of the kind, plaintiff would not be protected against interferences with prospective customers who might come to his office. Thereby, for the privileges of his office, he was to share in compensation earned in deals subsequently consummated which originated there. The acceptance of the proposition was to be implied from acquiescing in defendant's subsequent enjoyment of the privilege, in consideration for which he promised to share commissions. The jury might have concluded that the deal had its inception in plaintiff's office. That Bowder was not Heath's agent can make no difference. It was enough if, as employee of an agent of Heath, he presented a customer at plaintiff's office to whom the stock of goods listed with defendant was subsequently exchanged. Nor is it of consequence that the first proposition of Iowa land failed, if the exchange of the stock of goods for the Nebraska land was the result of negotiations then begun. The stock of goods had been listed with defendant for exchange generally, and the trade was to a customer furnished through the introduction of Bowder at plaintiff's office and arrangements for a meeting there made, as the jury might have found, and, if so, the deal was gotten at said office within the meaning of the parties. Nor is there any basis for the contention that the exchange was effected under a subsequent employment by the owner of the stock of goods. There may have been a conversation between such owner and defendant to the effect that he was to assist in the exchange for the Nebraska land, but there is no pretense that the former agency had been terminated, or that the customer for the stock of goods was

not found by defendant, and there was evidence enough to warrant the conclusion that this was through the introduction to and arrangement with Bowder in plaintiff's office.

II. The court submitted the issue as to whether the trade was commenced or conducted in plaintiff's office, and it is argued that as there was no evidence that it was conducted there, this was error. The trade was not discussed there farther than to arrange for a meeting the next morning, and the court must have had reference to the making of this arrangement. Nothing else could have been so construed, especially inasmuch as no claim was made in the petition or in the testimony on the theory that negotiations were conducted there, and we are satisfied the jury could not have interpreted the instructions otherwise.

The fourth instruction requested was rightly refused for that it directed that there must have been an express acceptance of the defendant's agreement to pay for the privileges of the office. The petition alleged an express promise on defendant's part but is silent as to the nature of the acceptance, which, as we have said, was to be inferred from acquiescence in the continued enjoyment of its privileges.

2. SAME:
acceptance of
proposition
to divide
commissions.

Lastly the paragraph of the charge submitting forms of verdict is criticised in that the jury was told to insert the amount allowed, if the verdict should be for plaintiff. This, it is argued, left the amount to be determined to the jury. Without so deciding, suppose it did? The court instructed the jury that unless an agreement such as mentioned was entered into, there could be no recovery. The commission earned by defendant was $350, so that the verdict should have been for $175, or for defendant. The jury found for plaintiff and yet allowed him but $75. To criticise the jurors for so doing is hardly gracious in appellant, as the

3. DAMAGES:
submission of
issue: harm-
less error.

error was in his favor and could not well have been pre-judicial.

III.   An answer, in part hearsay, was made to a pertinent inquiry, and exception is taken to a ruling by which the court refused to strike the same.   Had the motion been

4. EVIDENCE: hearsay: motion to strike.

directed specifically at that portion which was hearsay, it should have been sustained. It sought to exclude the entire answer and, for this reason, the ruling must be upheld.   It is no part of the court's duty to pick out objectionable parts of the evidence when asked to strike the whole of it from the record.   Such a motion, if any of the evidence is unobjectionable, properly may be overruled.   In response to an inquiry as to whether he ever heard defendant say that he had not met Bowder in plaintiff's office, Engberg answered: "I never heard Mr. Pray say so, that he met Bowder; Bowder told me he met Mr. Pray."   Defendant moved to strike out the last sentence as hearsay, but the motion was overruled.   The statement was plainly hearsay.   The motion pointed out the precise portion of the answer subject to objection.   It should have been sustained.   But Bowder had so testified, and that he had told Engberg the same thing added little or nothing to the weight to be accorded his account of the transaction.   We are inclined to regard the ruling as without prejudice.—*Affirmed.*