ALBERT BALL, Appellee, v. GEORGE W. DAVENPORT, Appellant.

**TRIAL:** Motion for Directed Verdict—Adverse Ruling—Failure to
1 Renew Motion—Waiver.   One who moves for directed verdict
before the close of all the evidence, suffers an adverse ruling and
fails to renew such motion after the close of *all* the evidence, thereby
waives any error, if any, in such ruling.

**CONTRACTS:** Broker's Commission—Construction of Terms—"Con-
2 summation" of Deal—Jury Question.   The use of words and
phrases in such connection that reasonable minds may well differ
as to the sense in which they are used precludes the court from
declaring their meaning as a matter of law.   In a case wherein
a real estate broker's commission was due "on the consummation
of said deal," *held* that defendant could not justly complain that
the court directed the jury to determine the sense in which the
words were used.

**CONTRACTS:** Construction—Giving Life to All Facts.   A construc-
3 tion of a contract that gives due effect to all the facts will always

be preferred to one which makes a part of the facts idle. In other words, a construction is to be avoided which accomplishes for a thing done no more than would exist without the doing of that thing. So held under conflicting claims as to when a broker's commission was due under the contract.

PLEADING: Real Estate Brokers—Allegation—Proof—Variance—
4 Oral Contract—Written Adoption. Proof must correspond to allegation. Rule held not violated by (a) declaring on an oral contract and (b) on the trial reinforcing the claim by showing a subsequent written adoption of such oral contract.

PRINCIPLE APPLIED: Plaintiff pleaded that defendant orally employed him to *procure a contract* for an exchange of defendant's lands for an agreed commission; that he caused defendant and a third party to enter into a writing stipulating for an exchange, but providing that defendant should not be bound thereby until the defendant had finally approved its terms, after examining the lands belonging to the third party; that defendant did later in writing approve such writing. On the trial, plaintiff was permitted to show in support of his pleading that there was inserted in the writing between defendant and the third party (being the writing which defendant at a later date finally approved) the following clause, to wit: "In the event of the approval of said contract by the said George W. Davenport (defendant), then and in that event he agrees to pay Albert Ball the sum of $350.00 as compensation for his services as his agent in the consummation of said deal." *Held*, to constitute neither (a) variance nor (b) failure of proof.

TRIAL: Instructions—No Evidence Applicable—Who May Complain.
5 An instruction should not be given unless there is evidence in the record to which it can be applied; but if an instruction be given in violation of this rule, a party who is thereby given an unwarranted chance for a verdict cannot complain.

PRINCIPLE APPLIED: Plaintiff, a broker, claimed his commission was due when the contract for exchange of land was signed. Defendant claimed the commission was due only when the exchange was actually executed. The court instructed that, if one party understood the agreement as he claims and the other party as he claims, and neither agreed to what the other understood, then there was no contract. There was no evidence of the failure of the minds to meet. Held error, but as it gave defendant a chance to secure a verdict to which he was not entitled, he could not complain.

**TRIAL:** Broker's Commission—When Earned—Instructions. Instruc-
6  tions reviewed and held to fully and fairly present the conten-
tions of the parties as to when, if at all, a broker's commission
was earned.

*Appeal from Keokuk District Court.*—HON. HENRY SILWOLD,
Judge.

FRIDAY, APRIL 9, 1915.

ACTION to recover $350.00 for alleged services in procur-
ing a contract for the exchange of property.  The contract
was got, but the properties were not exchanged.  Under the
record, one Billick, the person who contracted with defendant
for the exchange, was in default for failing to furnish such
an abstract as the contract required, and it has been adjudi-
cated that on account of such default he could not compel
this defendant to perform.  The verdict of the jury awards
plaintiff the full amount of his claim, and defendant appeals.
—*Affirmed.*

*Stockman & Backer,* for appellant.

*Wagner & Updegraf* and *Hamilton & Beatty,* for ap-
pellee.

SALINGER, J.—I. Much of which defendant complains
is presented by exceptions to the overruling

1. TRIAL: motion
for directed
verdict: ad-
verse ruling:
failure to re-
new motion:
waiver.

of a motion by defendant that verdict be di-
rected for him.  Appellant did not stand upon
this motion.  He introduced testimony after
the motion was overruled, and did not renew
same at the close of all the testimony.  It is settled in this
court that this waives the motion, and that, therefore, no
error involved in denying same is available on this appeal.

II. The ultimate dispute is this: Plaintiff claims that
his commission was due at the time when he got the parties
to sign a contract to exchange.  Defendant insists that none
was due until the exchange stipulated for was actually con-

summated on the terms of the signed contract, and that failure to consummate it is wholly due to the fact that Billick was either unable or unwilling to perform, or both.

In talks had in October, 1912, and before anything was reduced to writing, a one per cent commission, amounting to $350.00, was agreed on, and it is admitted it is not a commission for a sale, as distinguished from an exchange. Whatever conflict there may be is as to the contention of the appellant, testified to by him, that plaintiff was not to have such commission until after a satisfactory exchange of lands was actually consummated. For this position it is pointed out:

1. That at the outset plaintiff asked whether defendant "would consider an exchange for his farm here for a farm in Kansas," and that defendant said he "might consider such an exchange, depending upon the location of the farm there."

2. That defendant asked what commission he would charge "for handling the deal."

3. The following testimony of the plaintiff:

Q. "And he asked you what commission you would charge for the exchange if you made one?"

A. "Yes, sir, he asked what commission I would charge for handling *this* deal, and I said as much as it was a trade I would only charge him one per cent. Plaintiff asked me how much I would charge for handling *the* deal."

4. The wife of plaintiff says defendant told her he would do nothing with another who wanted two per cent "for making the exchange," until he heard from plaintiff, "on the Kansas deal."

5. After these talks between the parties, and before November 25th, the defendant signed a writing which recites that "the parties hereto have agreed upon an exchange of real estate." But this statement throws no light on the dispute, because the fact that an exchange had been agreed on leaves it open whether pay was to be got for obtaining such

contract, or for obtaining the exchange stipulated for in the contract.

Up to this point, there is some reason to claim that the evidence fails to support the theory that commission was to be paid for the mere getting of the contract.

So far as it is material in this suit, said writing provides that on the exchange of deeds each party is to deliver to the other "a merchantable abstract of record," showing title in each grantor, and that the contract shall not be binding on defendant unless, on or before December 5, 1912, he, after examining the condition and reasonable value of the Kansas land, approve the contract by signing a ratification written on the contract. At the suggestion of plaintiff, a clause was inserted that, if defendant does so approve, he agrees to pay plaintiff $350.00 for his services as agent "in the consummation of said deal." After such investigation, defendant signed the following ratification:

"November 25, 1912. I, George W. Davenport, having made investigation with reference to the condition and reasonable value of the 480 acres of Kansas land described in the foregoing contract, do hereby ratify and approve said contract and the terms and conditions thereof."

The answer of defendant, in so far as relevant here, asserts merely that by valid contract it was actually understood and agreed that no commission was due until the exchange "was fully made and completed"—and that "the alleged ratification and approval of said alleged contract referred to in plaintiff's substituted petition was secured, if at all, at and with the undue request and solicitation of the plaintiff." There is no evidence upon the claim of undue influence, except that when it came to signing the ratification plaintiff asked defendant what he was going to do; and defendant hesitated and hung back for a little while—and the whole record indicates that defendant is not claiming to have been unduly influenced into an unsatisfactory agreement,

but is defending because the owner of the Kansas land did not comply with the agreement into which defendant did enter.

2. CONTRACTS:
broker's com-
mission: con-
struction of
terms: "con-
summation" of
deal: jury
question.

III. It is apparent the real controversy begins with the writing done in Iowa, and involves some later writing done in Kansas. And, as we view it, the controlling question is whether the trial court erred in its treatment of said writing.

The first part of a continuous clause therein is that certain things shall be done by defendant "in the event of the. approval of said contract" by defendant. After thus stating that what he agreed to depended on this approval, he adds what he is to do in event of approval, to wit, to pay plaintiff $350.00 "as compensation for his services as their agent in the consummation of said deal." The essential claim of defendant is that the trial court should have disregarded the part of the clause which makes approval a condition precedent to payment; that it should have read the writing as though it merely agreed to pay for services in consummating "said deal," and should have charged that, as matter of law, the word "deal," as here used, refers to the consummation of an exchange, and not to the obtaining of a completed contract obligating the parties to exchange. Passing whether the charge complained of was so excepted to as to present what appellant here complains of, the instructions refused and those given clearly exhibit the difference between the theory of the court and that of defendant.

The offered instructions proceed on this line: Number sixteen charges that the undisputed evidence shows plaintiff was to be paid on the "consummation of said deal" and that this means the actual exchange of the properties; number two, that the performance of the contract means the completion of the exchange; numbers three, eleven and seventeen, that plaintiff cannot recover if the contract to exchange was not in fact carried out. Number four urges that plaintiff cannot

recover if Billick could not or would not perform. Instruction number ten given by the court instructs that the meaning of the word "consummation" depends upon how and in what connection it is used; that the consummation of the contract is reached when all has been performed which the contract requires; and that, here, if the contract was that plaintiff was to be paid when the contract between the defendant and Billick was signed and approved by defendant, then such signing and approval was a consummation; but that if it was the contract that no payment should be made until the deal was fully consummated by the execution and exchange of deeds, then the contract between the parties would not be consummated until such deeds were executed and delivered. An exception to this instruction urges that the word "consummated" should be construed according to the context and approved use of the language; and that the instruction fails so to construe it; that there is no evidence whereon to base the definition attempted by the instruction, and no evidence to show that the word was used in any other than the ordinary and usual way, form and manner. Instruction number five, given, directs the jury that plaintiff cannot recover if he was not to be paid "until deeds had been executed," but could recover without that if he was merely obliged to obtain a contract, instead of the performance of the contract. Number nine declares that the default of Billick is established, and that, therefore, plaintiff has not earned his commission if performance of the contract was required; but that if the agreement was to pay a commission for obtaining the signing and approval of the contract Exhibit A, then the default of Billick was wholly immaterial.

It is manifest that the court took the position that it was a question of fact what the parties meant by the words "consummation of said deal;" that if the jury found it referred to the obtaining of the contract, plaintiff must recover; and that if it found it referred to actually consummating an exchange of properties, the plaintiff could not recover. It

was the theory of defendant that the words "consummation of said deal," as a matter of law, referred to the consummated exchange of properties, instead of to obtaining the signing and approval of the contract.

In support of the position taken by defendant in offering instructions and excepting to instructions given, it is stated in varying ways that the deal referred to in the writing was an exchange of property; that nothing else is the subject of the contract, and that these words, as a matter of law, refer to the consummation of the exchange; and that the court should have so charged; that any other theory is unnatural and strained; that there was no evidence warranting the jury in construing these words to relate to a mere approval and signing of the contract, and no evidence that plaintiff was to be paid merely for obtaining such signing and approval. It is urged to be an unreasonable construction that defendant would agree to pay commission for the mere signing of the contract; that he would allow an agent to recover upon getting a contract signed by an utterly insolvent buyer or one who broke the agreement; that in this case it would mean compelling defendant to pay when he got nothing of value in return. It may be added in passing that there is no evidence that Billick is insolvent, and that, while it has been decided he could not have specific performance, it has not been decided that defendant could not enforce such performance.

Some stress is laid on the fact that the *Reynolds* case, 148 Iowa 213, gives the Webster dictionary definition of the word "deal," that it is "an arrangement to attain a desired result by a combination of interested parties." No doubt this correctly defines "deal;" no doubt that the possibility of these consequences upon one construction have bearing on what construction should be adopted. But neither concession bears on whether the construing should be done by the court instead of the jury, and both do not necessarily establish that the jury arrived at so arbitrary a construction as that we should interfere.

When reasonable minds may differ on which one of two conclusions should be drawn from given facts, it is a jury question which deduction is the true one. Where one urges a deduction which excludes a part of the evidence, while the other presents one which makes all the evidence effective, it is, putting it at its best for the one whose theory does not fit all the facts, at least a jury question whether the position which gives life to all the evidence should not be sustained rather than the one which makes a part of the facts idle. Have we such a case? ·

The writing provides that it shall not bind defendant unless, after he has signed it once, he, after investigation, approves in writing what he has signed. Without the provision, then, that payment should be made "in the event of approval," no payment could be due before such approval, because, whatever deal is referred to, no deal could be consummated before such approval was made. If it is possible to avoid it, construction should not reach the result that the written provision has no purpose except one that would be accomplished without it. As, without this provision, no commission is due until after approval is made, the written words as to payment in event of approval are, on defendant's theory, merely deliberately written waste matter. On the theory of plaintiff, this clause was inserted to accomplish something. He says it was put there to provide that the deal shall be deemed consummated when approval is indorsed, and, therefore, payment made then. The defendant's theory cannot stand if effect be given to all the writing. The other alone uses all the facts. As said, defendant has no just complaint that the choice between such theories was submitted to a jury.

*Greusel's* case, 98 Iowa 405, to which we are referred, decides that, where the owner agreed to pay a commission in case he should succeed "in disposing of" the property on acceptable terms, and the agent procures a buyer who makes a written contract to buy the goods, and such purchaser is

unable to perform his contract, the agent is not entitled to commission. One extract from the decision makes its essential holding thoroughly clear:

"Plaintiff's contract to dispose of said property was not executed by finding one who would enter into a contract for its purchase in the manner and on terms agreeable to defendant. It seems to us that the contract of the parties contemplated a complete sale and transfer of the property or the making of such a contract of sale as was enforcible. Owing to the inability of the defendant to make title the sale was never fully consummated."

It seems to us that this case does not rule for defendant. Of course, one who is "to dispose of property" before a commission is due cannot recover if the property is not disposed of, even though a contract is made which will dispose of the property if the contract be performed. This is but saying that no recovery on a contract can be had without performing that contract. It is of no help if here the commission was to be paid for merely getting the contract. The same law which denies pay on the contract to dispose of property may grant pay for getting a contract though no property is transferred. In each case, the law enforces the contract which was made.

We are favored with other citation of authorities, and with some analysis by way of avoidance of cited authorities. We have here a case wherein this cannot be helpful. If it is once settled what theory of the facts we are bound to adopt, the law applicable is settled and plain. There is and can be no law which prevents one from agreeing to pay for the mere getting of a contract to exchange, nor another from agreeing that nothing shall be paid him until the exchange is actually effected. The right to make either agreement is self-evident. It is not a question of law, but of ascertaining, under the

rules governing appellate review, which agreement was made.

3. PLEADING: real estate brokers: allegation: proof: variance: oral contract: written adoption.

IV. It is strenuously urged that there is such variance between plea and proof as to leave the allegations of the parties unproved —as to amount to a failure of proof. We doubt whether the record presents such claim for review.

The motion to direct verdict, probably, does present it, in the statement that "plaintiff has failed to establish a right to recover under his alleged cause of action pleaded in his petition herein;" but, as seen, that motion is waived—and the assertion in motion for new trial that it was error to overrule the motion to direct verdict does not obviate that waiver.

The motion for new trial asserts, in the most sweeping terms, that there was error in all rulings upon objections to testimony. If this be treated as an attempted objection, that matter admitted is not warranted by the pleadings, it still appears that no objections were made, and hence that none were ruled on. This narrows the presentation of the alleged variance to refused instructions offered and exceptions to the charge given. The offered instructions which can, by possibility, be entitled to consideration on this point are as follows: Numbers 5, 6, 7 and 8 request a charge that if one party understood the agreement in one way, and the other in a different way, there was no meeting of the minds, and, therefore, there should be a verdict for defendant. Numbers 14 and 15 urge that, as defendant may plead inconsistent defenses, plaintiff must establish all that he alleges, despite an admission by defendant in one of his defenses that he had employed plaintiff as his agent. Numbers 2, 3, 11, 16 and 17 present in various ways that plaintiff was entitled to nothing because no exchange had been consummated. No instructions excepted to, and no exception to the charge, or any part of it, seem to us to touch this question of variance. This is not elaborated here because it will be necessary in other heads of the discussion to analyze all instructions and excep-

tions for which, in reason, any claim can be made that they have any reference to variance or failure of proof.

V. But without reference to whether the point is sufficiently presented, we are clear that it is not well taken. The petition alleges that about October 29, 1912, defendant "orally employed the plaintiff to act as his agent to procure a contract of exchange satisfactory and acceptable to the defendant" of described lands; that defendant so and further agreed "that in the event of plaintiff procuring a contract with the owner of the 480 acres of Kansas land for the exchange of his farm of 280 acres, at $125.00 per acre, for the 480 acres in Kansas," on terms acceptable to the defendant, then defendant would pay plaintiff a commission of one per cent on the value of his land, as taken in said exchange, or $350.00. It is alleged further "that the plaintiff then and there orally agreed to attempt to procure a contract of exchange for the said defendant" of said lands; further, that about November 18, 1912, plaintiff procured the making of a written contract which recites that the parties to it "have agreed upon an exchange" for said lands; further, the contract is not to be binding on defendant until he approves of it in writing, after investigation of the Kansas land; that on November 25th, defendant did so approve in writing; that there is a further proviso inserted, which binds defendant, if he so approves the contract, to pay plaintiff $350.00 "as compensation for his services as their agent in the consummation of said deal." It is alleged "that by reason of the foregoing facts" the defendant owes plaintiff $350.00, for which he prays judgment.

That one may not sue on one theory and recover upon proving a totally different one is, of course, true; and that such recovery was permitted is insisted on in oft repeated statements, which vary merely in form. The essential claims can be grouped under the following heads:

1. Plaintiff has not declared on the contract made in Kansas on November 25th, but on one made October 29th, in Iowa.

2. Where the allegation is of an agency to procure an exchange contract, and the proof is of an agency to obtain a consummated exchange, there is failure of proof.

We find no variance on the first position. The petition has not elected between contracts of different dates, and thus caused plaintiff to fall between two stools. He declares on his oral agreement made in Iowa in October, and seeks to reinforce it by a written adoption of it made in Kansas in November. We therefore do not agree that the written agreement to pay is not binding on the theory that no claim is made except on verbal agreement.

The second position, too, has no support in the record. It may be conceded, for the sake of argument, that there is some evidence tending to show an agreement to pay on a consummated exchange rather than for merely obtaining a contract agreeing upon an exchange, but, surely, it is possible to infer from the testimony that plaintiff should be paid for merely obtaining such contract; and, as we have had occasion to point out, there is a writing for which it may in reason be claimed that it tends to sustain plaintiff's position. On the whole, it is clear that the allegation of the petition is supported by some proof relevant to what the petition pleads.

VI. Instruction 6 is, in substance, that if one party understood the agreement as he claims, and the other party as he claims, and neither agreed to what the other understood, then there is no contract—and that to determine how defendant understood the agreement, the jury could consider that clause in the writing which says "in the event of the approval of said contract by the said George W. Davenport, as aforesaid, then and in that event, the said parties of the first part agree to pay to Albert Ball the sum of $350.00 as compensation for his services as their agent in the consummation of said deal."

4. TRIAL: instructions: no evidence applicable: who may complain.

This instruction is not vulnerable to the objection made in argument that plaintiff's evidence tends to show a contract

to pay on a consummated exchange, while the charge allows a recovery on merely obtaining a contract agreeing to an exchange. The instruction does not deal with that question at all, but only with the effect of the failure of the minds of the parties to meet. And the exception makes no complaint that this instruction is irrelevant to the proof. It is that the instruction allows the jury to place its own construction on the meaning of this clause in the contract and limits its consideration to said clause, when, instead, it was the duty of the court to construe it. It would have been a better objection to this instruction, were defendant in position to make it, that there was no evidence of failure of the minds to meet, and offered instructions 5, 6, 7 and 8, whose refusal is complained of, do urge that defendant should have a verdict because the minds of the parties did not meet. Now, in the first place, the refusal of these instructions is cured by giving the same thought in instruction number 6. But we think there was nothing to cure, and that these offered instructions were rightly refused because we find no evidence whereon to base them, notwithstanding the sweeping claims for the defendant that neither party had any thought of making such a contract as plaintiff claims. This case does not present that each failed to understand what was confessedly said, as the other did, but it presents simply a conflict as to what was said, and how what is said or written shall be construed, and by whom. It follows that, while it was error to give instruction six, this is not because it permits a recovery variant from plea, but because there is no evidence of a failure of minds to meet. But as this errs in defendant's favor by giving him an unwarranted chance for a verdict, he, of course, cannot complain.

We think that at most appellant can but claim that it was a fair question whether such a contract as plaintiff claims was or was not in the minds of both. In such case, it was proper for the court to submit it, as was done in instruction six, even if proper objection had been made; and, as we have said, none such was made.

VII. A number of complaints are made as to the giving and refusing of instructions. Instruction one charges that plaintiff claims from the defendant for services rendered as a real estate agent, and he states for his cause of action that in October, 1912, defendant orally employed him to act as his agent to procure a contract of exchange satisfactory to defendant of certain lands owned by defendant and other lands; that he brought defendant and Billick together, and through his efforts caused the parties to enter into the contract Exhibit A; that defendant denies plaintiff's contract, and avers that by the oral contract plaintiff was not to receive any pay until after the proposed exchange of property had been fully made and completed; that such exchange has never been made, and that plaintiff has wholly failed to produce a party for such exchange as agreed with him by defendant. The exception to this is that it does not state one defense pleaded, to wit, that plaintiff has never produced a party who was ready, willing and able to make an exchange; wherefore, the consideration of the contract with plaintiff has failed. It needs but an inspection of number one to see that such defense was not omitted.

5. TRIAL: broker's commission: when earned: instructions.

By instruction five, the plaintiff is to be denied a recovery if the jury finds that he was not to be paid "until deeds had been executed" by each party. The exception to it "and to the word 'deeds'" is that it "does not include the matters necessary to such completed exchange as is contemplated by the contract." A similar complaint is lodged against number ten. It would not have bettered the charge to have put all elements that might be involved in an exchange into every paragraph of the charge. It is fairly clear that the charge as a whole gave all these elements proper presentation. As to the refusal of instructions presenting in effect that there could be no recovery unless the exchange was consummated, and offered instruction number four, which charges that plaintiff cannot recover if Billick could or would not perform, we have

to say that they were properly refused because they ignore the possibility of finding that commission was to be paid for merely getting a contract, in which case the failure, inability or unwillingness of Billick to perform would neither demand nor justify a verdict for defendant. So far as proper, this point was covered by instruction nine, which charges that the default of Billick is proven, but that this becomes immaterial if commission was to be paid upon the mere signing of contract. And the only objection made to number nine is the statement, that if commission was not due "until the deeds had been exchanged by Davenport and Billick," then the use of the word "deeds" is improper, and it limits the jury to a consideration of exchange of deeds only, and fails to include other elements involved in the proposed exchange of property. Instruction ten charges, in effect, that it is for the jury what deal is referred to in the agreement to procure the "consummation of said deal." It is said that if the "contract" was as plaintiff claims, one finding should result; the opposite finding, if the "contract" was the one asserted by defendant. The exceptions to this again present the thought that, in emphasizing delivery, or execution and delivery, of deeds, other elements involved in the exchange are omitted, an objection already herein ruled upon. But they also urge that, as there are two contracts referred to in the instruction, the same is confusing as to which contract is being referred to in different parts of the instruction. This appears to us to be hypercritical and to be untenable upon the face of this instruction, to say nothing of other instructions which clarify instruction ten, if it needs it.

Instruction number three says plaintiff cannot have a verdict without proving that the contract he claims was made and fully performed by him, but that if he has failed to establish "such facts" by a preponderance, then he cannot recover. The exception to this is that the jury is not told what the elements of the contract are, "and also because the use of the word 'facts' does not clearly show or state what is

intended to be referred to.'' If the objection were good to this instruction if the instruction stood alone, and we do not think it is, it would still not be well taken in view of other instructions given and to be read in connection with number three.

. We find no error in the record, and the judgment of the district court, therefore, must be and is—*Affirmed.*

DEEMER, C. J., LADD and GAYNOR, JJ., concur.